Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Edward Hillenbrand (SBN 310872)
edward.hillenbrand@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
Tel.: 213.680.8400

Michael Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA  90071
Tel.: 213.680.8400

*Attorneys for Applicants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SANA ISMAIL ABUDAWOOD; AYMAN ISMAIL ABUDAWOOD; ANAS ISMAIL ABUDAWOOD; SALWA ISMAIL ABUDAWOOD, <br><br> Applicants, <br><br> v. <br><br> ELEANOR DE LEON; AALA ABUDAWOOD, <br><br> Respondents. | Case No. 8:23-cv-2448 <br><br> **APPLICANTS' NOTICE OF MOTION AND MOTION TO CONFIRM ARBITRAL AWARD, FOR ENTRY OF JUDGMENT, AND FOR ENFORCEMENT OF AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

---

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, on January 26, 2024, at 10:30 a.m. in Courtroom 8A of the United State District Court for the Central District of California, at the First Street Courthouse, located at 350 West 1st St., Los Angeles, California 90012, Applicants and Movants Sheikha Sana Ismail Abudawood, Sheikh Anas Ismail Abudawood, Sheikh Ayman Ismail Abudawood, and Sheikha Salwa Ismail Abudawood (collectively, the "Abudawoods") will and hereby move pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1–16) and 28 U.S.C. § 1332(a)(2) for an order to confirm and enforce an October 13, 2023 arbitration award entered by the Honorable Layn R. Phillips (former United States District Court Judge) against Respondents Eleanor de Leon and Sheikha Alaa Abudawood (collectively, "Eleanor/Alaa").

This Motion to Confirm and Enforce is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Mark Holscher and accompanying exhibits in support thereof, any Reply brief, and all other papers and any oral argument that may be presented at the hearing.

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

1

## **<u>TABLE OF CONTENTS</u>**

2

<u>**Page**</u>

NOTICE OF MOTION ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES.................................. 1

I.      Introduction. .......................................................................... 1

II.     Factual Background. ............................................................. 4

III.    Argument ............................................................................ 11

     A.      The Court Has Subject Matter and Personal Jurisdiction. ...... 11

     B.      The Court Should Confirm the Award and Enter Judgment Thereon. .......................................................... 13

     C.      The Court Should Enter Appropriate Orders to Enforce the Award. ................................................................ 16

     D.      The Court Should Assess the Abudawoods' Post-Award Attorneys' Fees Against Eleanor/Alaa....................................... 18

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Applied Underwriters Captive Risk Assurance Co. v. O'Connell Landscape Maint., Inc.*,
  2018 WL 11276845 (C.D. Cal. June 25, 2018) ...................................12

*Carter v. Health Net of California, Inc.*,
  374 F.3d 830 (9th Cir. 2004) ...........................................................11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .........................................................16

*Cox Wootton Lerner, Griffin, & Handson LLP v. Ballyhoo Media Inc.*,
  2022 WL 2132126 (C.D. Cal. Jun. 13, 2022) .....................................17

*Domino Grp., Inc. v. Charlie Parker Mem'l Found.*,
  985 F.2d 417 (8th Cir. 1993) .......................................................4, 13

*Drywall Tapers & Pointers of Greater New York Loc. Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc.*,
  343 F.R.D. 358 (S.D.N.Y. 2022) .....................................................17

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  --- U.S. ---, 141 S. Ct. 1017 (2021) ..................................................12

*Goldman v. Gagnard*,
  2011 WL 13177619 (N.D. Cal. Oct. 27, 2011) ...................................14

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008) ...........................................................4, 14, 15

*Hall v. Cole*,
  412 U.S. 1 (1973) ...........................................................................18

*Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*,
  707 F.2d 425 (9th Cir. 1983) ................................................18, 19, 20

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. United Farm Tools, Inc., Speedy Mfg. Div.,*
   762 F.2d 76 (8th Cir. 1985) .............................................................19, 20

*Jiaxing Super Lighting Elec. Appliance Co. v. Lunera Lighting, Inc.,*
   2019 WL 13219412 (N.D. Cal. Mar. 13, 2019) ..................................13

*Lagstein v. Certain Underwriters at Lloyd's, London,*
   607 F.3d 634 (9th Cir. 2010) ..............................................................15

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.,*
   665 F.3d 1091 (9th Cir. 2011) .......................................................14, 18

*SAG-AFTRA v. Corpus, LLC,*
   2022 WL 4290751 (C.D. Cal. Sept. 15, 2022) ..................................4, 16

*Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc. of Arizona,*
   84 F.3d 1186 (9th Cir. 1996) .......................................................4, 18, 20

*Stafford v. Int'l Bus. Machines Corp.,*
   78 F.4th 62 (2d Cir. 2023) .................................................................14

*Sw. Regional Council of Carpenters v. TEC Installations, Inc.,*
   2018 WL 6016908 (C.D. Cal. Jun. 20, 2018) ....................................17

*U.S. Life Ins. Co. v. Superior Nat. Ins. Co.,*
   591 F.3d 1167 (9th Cir. 2010) .............................................................15

**Statutes**

28 U.S.C. § 1332 ....................................................................................12

Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* ...........................*passim*

**Rules**

Fed. R. of Civ. P. 5.............................................................................12, 13

Fed. R. Civ. P. 58.................................................................................16

iii

**Other Authorities**

C. Wright, *et al.*, *Federal Practice and Procedure* (2023 online ed.)................................................................................16

Martin Domke, et al., Domke on Commercial Arbitration (2023 online ed.).............................................................13, 14, 18

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION.

Applicants and Movants are the siblings of Sheikh Osama Ismail Abudawood ("Osama"), a prominent Saudi Arabian businessman (collectively, the "Abudawoods"). They request that the Court confirm the Final Arbitration Award ("Award") issued by the Honorable Layn R. Phillips (former United States District Court Judge) against Respondents Eleanor de Leon and Sheikha Alaa Abudawood, Sheikh Osama's widow and daughter (collectively, "Eleanor/Alaa"). The Abudawoods further request that the Court enforce the Award and (1) compel Eleanor/Alaa to execute the documents necessary to effectuate the terms of a settlement agreement pursuant to the arbitration award, (2) grant the Abudawoods' request for their attorneys' fees and costs in light of Eleanor/Alaa's bad faith conduct, and (3) issue any additional remedies that are necessary to ensure Eleanor/Alaa's compliance.

This ordeal began after Sheikh Osama passed away in June 2017. Roughly a year later, Eleanor/Alaa filed a lawsuit in this Court against various of the Abudawoods and their companies over issues concerning the distribution and value of Sheikh Osama's estate, and ultimately seeking to sell their inheritance for cash. That lawsuit never made it past the pleadings stage.

Before a Motion to Dismiss the Second Amended Complaint was to be heard, the parties on June 1, 2022, executed a written, binding, and enforceable Settlement Agreement (sometimes also referred to as "MOU" or "Memorandum of Understanding") that achieved Eleanor/Alaa's principal goal—a sale of their inheritance for cash. Per its terms, the Abudawoods agreed to buy out Eleanor/Alaa's inheritance in Sheikh Osama's estate for

substantial cash consideration, including more than half upon execution of the required asset transfer and related documents and the remainder over three years in installment payments. Because of the complexity of the asset transfers foreseen by the binding settlement,[1] the parties agreed that they would be effectuated through further executed documentation. Eleanor/Alaa also agreed to dismiss all of their pending actions against the Abudawoods and their companies and to sign documents necessary to effect those dismissals.

But despite previously representing to this Court that they had "entered a binding global settlement . . . of their disputes, including this action" and that the settlement "renders Defendants' pending motion to dismiss, . . . currently set for June 10, 2022, moot" (*De Leon, et al. v. Abudawood, et al.*, No. SA-CV-18-01030-JLS (C.D. Cal., filed June 11, 2018) (the "Action"), Dkt. No. 162), Eleanor/Alaa subsequently demanded to renegotiate the Settlement Agreement to include a term which the Abudawoods had previously rejected, namely cash security or escrow for future installment payments.

Eleanor/Alaa's lawsuit was dismissed by this Court *with prejudice* for failure to prosecute and in light of the parties' binding Settlement Agreement. But even after the Court dismissed their case, Eleanor/Alaa refused to perform under the Settlement Agreement.

The Abudawoods thus reluctantly initiated arbitration proceedings before Judge Phillips, in accordance with the Settlement Agreement's dispute resolution terms. Eleanor/Alaa brought their own demand for

---

[1] Sheikh Osama's estate includes businesses, real estate and other Assets (as that term is defined in the "MOU") in many international jurisdictions, including Europe, Egypt, Saudi Arabia, the United Arab Emirates, and the Cayman Islands.

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

arbitration asserting that that Settlement Agreement was not binding and that a security or guarantee for future installment payments was a required term. On October 13, 2023, Judge Phillips entered the detailed and well-reasoned Award for the Abudawoods and against Eleanor/Alaa. *See* Decl. of Mark Holscher ("Holscher Decl.") Exs. D, E, filed concurrently herewith. He first concluded that the Settlement Agreement was a binding agreement and contained the parties' material terms. He next found that the Settlement Agreement did not include any kind of guaranty of or security for the future installment payments, and that Eleanor/Alaa were not entitled to any such security. He then granted specific performance in favor of the Abudawoods, and ordered Eleanor/Alaa to execute *within five days* the remaining documents in the form submitted by the Abudawoods (which had been completed by the parties by June 2023) consistent with the Abudawoods counsel's execution instructions (*i.e.*, concerning signing, notarization, initialing, etc.).

But even after five post-Award extensions were granted, by late November 2023, Eleanor/Alaa still had failed and refused to comply with the arbitration order and execute the required documents. In response, Judge Phillips issued two additional orders, including finding that the Eleanor/Alaa "have acted in bad faith" by refusing to comply with Award, that they have "disobeyed the Arbitrator's orders, acted to the prejudice of the Buyers [Abudawoods], and unjustifiably delayed and obstructed the administration of justice," and that the Abudawoods should be able to recover the reasonable attorneys' fees and costs associated with enforcing the Award. Holscher Decl. Exs. H, J. He recommended that any court presented with confirmation of the Award consider these findings in enforcing the award and crafting appropriate remedies to compel Eleanor/Alaa's performance. *Id*. Ex. J at 4–5.

1    Because Eleanor/Alaa still refused to comply with the Award, and
2    have willingly chosen to defy duly-issued orders to comply with the
3    Settlement Agreement's terms, the Abudawoods must reluctantly ask the
4    Court to intervene. The Abudawoods respectfully request that the Court
5    confirm the Award. There is no basis not to do so since none of the
6    statutory grounds provided in 9 U.S.C. §§ 10 and 11 apply and there is no
7    basis otherwise to vacate or modify the Award. *See* 9 U.S.C. § 9; *Hall St.*
8    *Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

9    The Abudawoods further ask that the Court enforce[2] the award in at
10   least three respects: (1) compel Eleanor/Alaa to execute the documents as
11   required by the Award, *see Domino Grp., Inc. v. Charlie Parker Mem'l*
12   *Found.*, 985 F.2d 417, 420 (8th Cir. 1993) (reinstating an arbitration award
13   of specific performance); (2) consistent with Judge Phillips' bad faith
14   finding, award the Abudawoods their post-Award attorneys' fees and costs,
15   *see Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus.,*
16   *Inc. of Arizona*, 84 F.3d 1186, 1192 (9th Cir. 1996) (*Sheet Metal*) (affirming
17   the award of attorneys' fees for failing to comply with an arbitration
18   award); and (3) issue any other appropriate and necessary orders to ensure
19   the enforcement of the Award and to avoid any further delay in the
20   resolution of the disputes and the transfer of the assets purchased by the
21   Abudawoods.

## II.
### FACTUAL BACKGROUND.

24   This case arises out of the parties' settlement of the Action, which
25   entailed a dispute over the estate of Osama Abudawood. *See* Action, Dkt.

---

26
27   [2] *See, e.g, SAG-AFTRA v. Corpus, LLC*, 2022 WL 4290751 (C.D. Cal.
     Sept. 15, 2022) (granting a union's motion to confirm and enforce an award
28   against a film producer for unpaid residuals).

No. 1 (complaint). The Plaintiffs were Eleanor/Alaa.[3] The Defendants were Sheikh Ayman Ismail Abudawood, Sheikh Anas Ismail Abudawood, Al Wafra, International Company for Industrial Investments Limited, and Al Safwa International Company for Industrial Investments Limited, as well as several other foreign entities.

Three years into the litigation, Eleanor/Alaa were on their Second Amended Complaint ("SAC"). Action, Dkt. No. 146. Plaintiffs had substituted counsel numerous times. *See* Action, Dkt. Nos. 85, 115, 126. The case was not yet at issue and the Court's personal jurisdiction over the foreign defendants remained in dispute. A fully briefed motion to dismiss—addressing personal jurisdiction, forum non-conveniens, and whether the SAC stated an actionable claim—was pending, to be heard on June 10, 2022. Action, Dkt. Nos. 151, 155, 157, 161.

On June 1, 2022, the parties entered a binding Settlement Agreement. Declaration of Mark Holscher Ex. A. The Settlement Agreement provided for the dismissal of the Action; for the resolution of all litigation pending in the United States, Saudi Arabia, the Cayman Islands, and elsewhere; and for the Abudawoods to purchase Eleanor/Alaa's interest in various business and real estate ventures for substantial cash consideration to be paid over four installments (more than half upon Eleanor/Alaa's execution of the asset transfer and dismissal documents, and the remainder over three years). *Id*. § 1(a)(i)(1)–(4).

Because of the complexity of the repurchases with businesses, real estate and other Assets located across the globe, the Settlement Agreement specifically provided that the parties would execute a "Long-Form

---

[3] Sheikha Alaa Abudawood appeared in the Action as "A.A.," because she was a minor at the time the first complaint was filed. She since has attained the age of majority.

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

Agreement" and related asset transfer documents (termed "Purchase Agreements"), as well as dispute dismissal documents (collectively, all "Transfer and Dismissal Documents"). *Id.* at §§ 2(a), 3(a), 3(b); *see also id.* § 5(a) (mutual recognition that the Settlement Agreement was "binding"). The Settlement Agreement further provided that any disputes would be resolved through an arbitration before the mediator who had helped broker the settlement:

> The Parties agree to submit any disputes arising out of the subject matter of this Memorandum of Understanding to the Hon. Layn Phillips (Ret.) for an expedited binding decision. Justice Phillips shall have final authority to resolve any disputed term.

*Id.* § 6(a).

The parties proceeded to prepare the Transfer and Dismissal Documents. The Court stayed the actions, pending the finalization of the settlement and dismissal. Action, Dkt. No. 163. Over the course of a year, at the request of the parties, the Court extended the stay numerous times. Action, Dkt. Nos. 166, 168, 170. Given the delay, on February 21, 2023, the Court issued an order to show cause (OSC) as to why the Action should not be dismissed for failure to prosecute. Action, Dkt. No. 172. On April 14, 2023 and May 12, 2023, the Court held hearings on the OSC. It set a further hearing for June 9, 2023, ordering parties present in the Central District to appear in person. Action, Dkt. No. 174.

Despite the fact that the Transfer and Dismissal Documents had been prepared and were agreed in final form (Holscher Decl. Ex. B at 4:14–6:15), Eleanor/Alaa belatedly insisted that the Abudawoods be required to provide security to guaranty future installment payments, and hence refused to execute them as required by the Settlement Agreement. *Id.*

1   The case came before the Honorable Josephine L. Staton on June 9,
2   2023 on the OSC re dismissal. At the hearing, Eleanor/Alaa's counsel
3   represented: "There have been 50-plus related agreements that we've been
4   working through, tax analysis from Ernst & Young, et cetera, that took
5   months and months of work. Fast-forwarding to today and the last several
6   weeks, *we've really narrowed the negotiations of the final settlement*
7   *called for in the term sheet to, essentially, one critical issue*. It's
8   security." *Id.* at 4:24–5:6. At the June 9, 2023 hearing, the Court found
9   Eleanor/Alaa's explanations for their failure to finalize the documents
10  inadequate. The Court explained:

11      I have no intent of keeping this on my calendar any longer.
12      There's nothing you've said today that is materially different
        than anything you've said in the past. There's nothing other than
13      we're still working through it. That works in the first 90 days. It
14      works in the second 90 days, maybe. The third 90 days? No, not
        really. You are over a year past when this has been agreed to. So
15      I know you've -- you might have -- your clients have things they
16      still want to get out of this, perhaps, but that's not where we are
17      right now.

18      So the Court's intent is to dismiss this case with prejudice based
19      on the representations, of over a year ago, that you had a binding
        settlement agreement, and a binding -- binding global settlement
20      agreement had been entered into. I've given you a year. I've given
21      you an opportunity to come in here repeatedly to tell me what
        the status is, and then I gave you a final opportunity [to] get it
22      done before we came back today. So that's the Court's ruling.

23  *Id.* at 8:18–9:12.

24      Later that day, the Court issued a minute order dismissing the
25  pending Action with prejudice. Holscher Decl. Ex. C (Action, Dkt. No. 181).

26      Following the dismissal, the parties initiated an arbitration before
27  Judge Phillips. Holscher Decl. ¶ 6. The Abudawoods sought specific
28  enforcement of the Settlement Agreement given the refusal of Eleanor/Alaa

7

to execute the Transfer and Dismissal Documents. Eleanor/Alaa sought a declaration that the Settlement Agreement was not binding, and further that it required the Abudawoods to give them security for future installment payments. *Id*. The Abudawoods disagreed. *Id*. In August of 2023, the parties submitted extensive briefing and written evidence to the Arbitrator in support of their respective positions. *Id*. ¶ 7. On September 5, 2023, the Arbitrator held a 4-hour arbitration hearing via Zoom, during which the parties were present and were represented by counsel. *Id*.

On October 13, 2023, the Arbitrator rendered a reasoned, written Final Arbitration Award, rejecting Eleanor/Alaa's contentions that the Settlement Agreement was not binding, did not contain all the material terms, and required security for future installment payments. Holscher Decl. Ex. D. The Arbitrator ordered specific performance in favor of the Abudawoods. *Id*. The Award ordered that:

> [W]ithin five days of the date of this order [*i.e.*, by October 18, 2023], the Sellers[4] execute the Buyers' long form settlement agreement entitled "Confidential Settlement Agreement and Mutual General Release", which is attached as Exhibit 37 to the Trinklein Declaration. The Sellers shall also execute the associated transfer documents, which are attached to the Trinklein Declaration as Exhibits 41-45, 47-48, 51-56, 59-66, 69-70, 74-75, 77-95, consistent with the execution instructions contained in Trinklein Declaration Ex. 40. [The agreed-to initial payment] shall be due and payable by the Buyers immediately upon the Effective Date [after the Transfer and Dismissal Documents were executed as required by Buyers].

*Id*. at 3–4. The Arbitrator served a signed copy of the Award on counsel for all parties on the date of its issuance. Holscher Decl. Ex. E.

---

[4] In the arbitration, the Eleanor/Alaa were referred to as "Sellers" and the Abudawoods as "Buyers."

Eleanor/Alaa's obligations under the Award were not burdensome. They only needed to sign the set of agreed-upon documents to trigger the Abudawoods' obligation to pay them the first cash installment by wire transfer. But Eleanor/Alaa did not timely deliver the signatures. Holscher Decl. ¶¶ 9–10. For various increasingly implausible reasons, they sought and obtained extensions from the Arbitrator on October 17, 2023, October 24, 2023, November 1, 2023, and November 7, 2023. *Id.* ¶ 10. The Arbitrator ultimately threatened to award the Abudawoods reasonable attorneys' fees and costs if Eleanor/Alaa did not execute the required documents by November 17, 2023. *Id.* ¶ 11; Ex. H. But Eleanor/Alaa nonetheless failed to do so. *Id.* ¶ 11; Ex. I. As the Arbitrator recited, "On November 17, 2020, counsel for Sellers notified the Arbitrator and Buyers' counsel that 'Sellers did not appear at our office this morning to execute the documents.' No explanation was offered." Holscher Decl. Ex. J. Buyers notified Sellers' counsel that Buyers' counsel and staff in the United States, Saudi Arabia, Egypt, and the United Arab Emirates had been standing by to approve the executed documents before being notified that Sellers did not appear to execute them." *Id.* Ex. I.

Ultimately, the Arbitrator's extensive efforts to obtain Eleanor/Alaa's compliance with his Award proved futile. After a hearing on November 28, 2023 (*Id.* ¶ 12), the Arbitrator issued a further order the next day detailing Eleanor/Alaa's noncompliance and specifically finding that they had acted in bad faith. *Id.* Ex. J. He made the following findings:

> Having considered the submissions and explanations provided by Buyers and Sellers and their counsel, the arguments of counsel, and the evidence in the record, the Arbitrator finds and orders as follows:
>
> - Sellers have violated the Arbitrator's order to execute the Documents by November 17, 2023.

- Based on Sellers' failure to comply with the Arbitrator's November 8 and 15 orders, and particularly the November 15 order without any further explanation, the Arbitrator concludes that Sellers have acted in bad faith. Sellers have disobeyed the Arbitrator's orders, acted to the prejudice of the Buyers, and unjustifiably delayed and obstructed the administration of justice. This finding does not extend to Sellers' counsel, who were prepared on November 17 to have all the Documents executed in the manner and method previously agreed upon by the parties to comply with the requirements of the United States and foreign jurisdictions.

- The Arbitrator recommends that any court confirming the Final Arbitration Award fully consider the Arbitrator's subsequent orders and the conduct of Sellers in determining whether to award Buyers reasonable attorneys' fees and costs consistent with the Arbitrator's subsequent orders.

- The Arbitrator recommends that any court enforcing the Final Arbitration Award fully consider the Arbitrator's subsequent orders and the conduct of Sellers in determining the appropriate means to compel the Sellers' compliance with the MOU and Final Arbitration Award.

- Buyers have permission to provide this order to the Cayman Administrator as proof that Sellers have been ordered to execute the joint instructions to the Cayman Administrator, so that the administration of the Cayman Estate can be completed in accordance with the terms of the binding, enforceable MOU. MOU ¶ 2(a).

- Buyers have permission to provide this order to their Saudi counsel as proof that Sellers agreed in the binding, enforceable MOU to transfers all of their interests in the Assets (as defined in the MOU), to dismiss the Saudi proceedings, and that the payments under the MOU "satisf[y] among other things the requirements of the Saudi court judgment on November 20, 2021 providing for the purchase of Sellers' shares in the Saudi Arabian Entities." MOU ¶¶ 2(a), 2(d).

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

- Any attempt by Sellers to pursue litigation through the pending lawsuits in the Cayman Islands and Saudi Arabia would further breach the terms of the binding and enforceable MOU, and any attempt to commence new litigation against the Buyers will result in a forfeiture by Sellers of all payments otherwise due from Buyers under the MOU upon the proper execution of the Documents and other adverse consequences. MOU ¶ 1(b)(ii).

- Buyers and their representatives have permission to provide this order to the courts and authorities in jurisdictions as necessary to ensure the enforcement of, and Sellers' compliance with, the terms of the MOU.

*Id.* at 4–5.

The Award being final, and the Arbitrator's orders and efforts to coax compliance from Eleanor/Alaa having proven unsuccessful, the Abudawoods are left with no recourse but to seek to rely on the enforcement authority of the Court.

## III.
### ARGUMENT

This Court should: (a) confirm the Award and enter judgment accordingly; (b) enforce the Award by issuing appropriate orders, including requiring Eleanor/Alaa to execute the Transfer and Dismissal Documents in the manner required or be subject to the full authority of this Court's contempt powers; and (c) because of the Eleanor/Alaa's bad faith, award the Abudawoods their post-Award attorneys' fees and costs.

### A.
### The Court Has Subject Matter and Personal Jurisdiction.

"[W]hen a petition is brought under the Federal Arbitration Act (FAA), a petitioner seeking to confirm or vacate an arbitration award in federal court must establish an independent basis for federal [subject matter] jurisdiction." *Carter v. Health Net of California, Inc.*, 374 F.3d 830,

833 (9th Cir. 2004). In this case, the Court has diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). The dispute regarding enforcement of the Award is between, on one hand citizens of the State of California, and on the other, citizens or subjects of a foreign state, namely the Kingdom of Saudi Arabia, and more than $75,000 is at issue in the dispute. *Id.*[5]

As to personal jurisdiction, Eleanor/Alaa are domiciled in Orange County, California, and are thus subject to general jurisdiction in this district. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, --- U.S. ---, 141 S. Ct. 1017, 1024 (2021) ("[A]n individual is subject to general jurisdiction in her place of domicile."). And under the FAA, notice of a motion to confirm "shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding." 9 U.S.C. § 9. Because Eleanor/Alaa reside in this district, the FAA permits service to be made on Eleanor/Alaa "as prescribed by law for service of notice of motion in an action in the same court." *Id.* That means service under Rule 5 of the Federal Rules of Civil Procedure is proper and adequate under the FAA. *See Applied Underwriters Captive Risk Assurance Co. v. O'Connell Landscape Maint., Inc.*, 2018 WL 11276845, at *3 (C.D. Cal. June 25, 2018); *accord Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49

---

[5] Eleanor/Alaa are each domiciled in and citizens of the State of California. (Action, Dkt. No. 149 ¶¶ 11–12). Sheikha Sana Ismail Abudawood, Sheikh Anas Ismail Abudawood, Sheikh Ayman Ismail Abudawood, and Sheikha Salwa Ismail Abudawood are natural persons domiciled in and citizens or subjects of the Kingdom of Saudi Arabia. Holscher Decl. ¶ 2. And the Award at issue in this Motion entails the transfer of numerous businesses and Assets worldwide in exchange for many millions of dollars in cash consideration.

F.4th 802, 814 (2d Cir. 2022) ("Given the summary nature of confirmation proceedings, it is unsurprising that the FAA would require only service of notice of an application as opposed to service of a full summons and complaint.").

Rule 5 service includes service by "mailing it to the person's last known address." Fed. R. Civ. P. 5(b)(2)(C). Copies of this motion and the supporting documents were mailed to Eleanor/Alaa's home—both by U.S. mail and Overnight mail—on the same day that this motion was filed.[6] Holscher Decl. ¶ 13.

### B.
### The Court Should Confirm the Award and Enter Judgment Thereon.

"Arbitration awards are not self-enforcing and are only given legal effect through court orders and judgments enforcing them." 2 Martin Domke, et al., Domke on Commercial Arbitration § 42:1 (2023 online ed.) (*Domke*). To effectuate an award of specific performance granted by an arbitrator, the award should be confirmed by an appropriate court. *See, e.g.*, *Domino Grp., Inc.*, 985 F.2d at 420; *see also Jiaxing Super Lighting Elec. Appliance Co. v. Lunera Lighting, Inc.*, 2019 WL 13219412, at *1 (N.D. Cal. Mar. 13, 2019) (should a party refuse to comply with an order from an arbitration award, a party can seek expedited relief under the FAA by asking the Court to step in and confirm the award).

---

[6] Separate counsel for Eleanor/Alaa both in the prior Action (Bird Marella) and in the arbitration proceeding (Manatt Phelps) also are being served. It is unknown whether these counsel currently represent Eleanor/Alaa in any capacity. Holscher Decl. ¶ 13.

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

The first step in that enforcement process is thus for the Court to confirm the Award. 9 U.S.C. § 9.[7] "Confirmation is a purely procedural mechanism by which a court converts an arbitration award into a judgment for enforcement purposes." *Domke* § 41:1; s*ee also Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (quoting to *Hall St. Assocs., L.L.C.*, 552 U.S. at 582) (recognizing a confirmation request pursuant to the FAA as a "mechanism[] for enforcing arbitration awards").

"There is a strong preference for judicial confirmation of arbitration awards." *Domke* § 41:1 "Confirmation is a summary proceeding that converts a final arbitration award into a judgment of the court." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011). The Federal Arbitration Act (FAA) instructs that an application to confirm an arbitral award "shall be made and heard in the manner provided by law for the making and hearing of motions[.]" 9 U.S.C. § 6.[8]

---

[7] The FAA conditions a court's authority to confirm an award on the parties having "agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration[.]" 9 U.S.C. § 9. But magic words are not required. As a Northern District case observes, "the overwhelming majority of circuits find that the parties contemplate judicial enforcement where, as here, the arbitration agreement expressly refers to 'binding' arbitration, states that the arbitrator's award is 'final,' and precludes any means other than arbitration to settle disputes between the parties." *Goldman v. Gagnard*, 2011 WL 13177619, at *2 n.2 (N.D. Cal. Oct. 27, 2011) (collecting cases). Because the Agreement contemplates that arbitration will be the remedy to resolve disputes, and that the arbitrator's award will be both "binding" and "final," Settlement Agreement § 6(a), the Settlement Agreement clearly contemplates judicial enforcement under the FAA.

[8] The FAA requires a party moving to confirm an award to concurrently file with the Court a copy of the arbitration agreement, the award, and any other papers pertinent to the confirmation. 9 U.S.C. § 13. All such papers

---

14

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

Under the FAA, a court "must" confirm an arbitration award unless there are grounds to vacate or modify it. 9 U.S.C. § 9; *see Hall St. Assocs., L.L.C.*, 552 U.S. at 582. "Unless the party challenging the award offers grounds for vacating, modifying, or correcting an arbitration award, the [FAA] . . . require[s] the trial court to confirm the award on the application of a party." *Domke* § 41:1. The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). An award may be vacated or modified only under one of the statutory grounds provided in 9 U.S.C. §§ 10 and 11. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010).

Here, there are no grounds to vacate the Arbitrator's Award. Both parties consented to and participated in the arbitration before an arbitrator who was specifically selected by the parties, by name, in the Settlement Agreement to resolve their disputes. Settlement Agreement § 6(a). Of course, there is no evidence that the award was procured by corruption, fraud, or undue means (9 U.S.C. § 10(a)(1), and there is no basis to claim "evident partiality or corruption in the arbitrator[.]" 9 U.S.C. § 10(a)(2). Certainly, there also is no evidence that "the arbitrator [] w[as] guilty of misconduct . . . or of any other misbehavior by which the rights of any party have been prejudiced[.]" 9 U.S.C. § 10(a)(3). And there is no basis to claim that the "arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

---

are included as Exhibit F to the concurrently-filed Declaration of Mark Holscher, and Exhibits 1–45 to the concurrently-filed Proposed Order.

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

Nor is there any basis to modify or correct the award. There was no "material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). The Arbitrator made no "award[] upon a matter not submitted to [him]." 9 U.S.C. § 11(b). And the Award is not "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c).

Nor is there any basis to modify or correct the award. There was no "material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). The Arbitrator made no "award upon a matter not submitted to [him]." 9 U.S.C. § 11(b). And the Award is not "imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c).

Consequently, the Court "must" confirm the award. 9 U.S.C. § 9. The FAA further "requires the court to enter judgment upon a confirmed arbitration award[.]" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133 (9th Cir. 2000). A Proposed Judgment is submitted herewith.[9]

## C.
## The Court Should Enter Appropriate Orders to Enforce the Award.

District courts in the Central District and elsewhere have considered and granted requests to confirm and enforce an arbitration award simultaneously. *See, e.g, SAG-AFTRA*, 2022 WL 4290751, at *1 (granting a

---

[9] Unlike an arbitral award, a court's judgment is required to "be set out in a separate document." Fed. R. Civ. P. 58(a). "[T]he required separate judgment should be self-sufficient and should not merely incorporate other documents by reference." 11 C. Wright, *et al.*, *Federal Practice and Procedure* § 2785 (2023 online ed.). To satisfy that self-sufficiency requirement, the Proposed Judgment attaches as exhibits the documents from the Trinklein declaration that the Award ordered Eleanor/Alaa to execute "consistent with the instructions contained in Trinklein Declaration Ex. 40." *See* Holscher Ex. G (Trinklein Declaration Ex. 40).

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

1    union's motion to confirm and enforce an award against a film producer for

2    unpaid residuals); *Cox Wootton Lerner, Griffin, & Handson LLP v. Ballyhoo*

3    *Media Inc.*, 2022 WL 2132126, at \*5 (C.D. Cal. Jun. 13, 2022) (granting a

4    law firm's motion to confirm and enforce an award against a client for

5    unpaid fees and costs); *Sw. Regional Council of Carpenters v. TEC*

6    *Installations, Inc.*, 2018 WL 6016908, at \*4 (C.D. Cal. Jun. 20, 2018)

7    (granting a motion to confirm and enforce an award against an employer

8    for work compensation); *Drywall Tapers & Pointers of Greater New York*

9    *Loc. Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc.*, 343

10   F.R.D. 358, 366 (S.D.N.Y. 2022). The Court should do so here.

11           Eleanor/Alaa's recalcitrance has caused obstruction and delay in a

12   process that was supposed to be completed in September 2022. The

13   Abudawoods have spent significant sums in attorneys' fees to compel

14   Eleanor/Alaa to comply with the terms of the binding Settlement

15   Agreement. Eleanor/Alaa forced the Abudawoods into an expensive

16   arbitration and then, when the Award went against them, simply ghosted

17   the proceedings and the Arbitrator's orders entirely. As the Arbitrator

18   found, their actions were in "bad faith," "acted to the prejudice of the

19   Buyers [Abudawoods], and unjustifiably delayed and obstructed the

20   administration of justice." Holscher Decl. Ex. J. Eleanor/Alaa should be

21   required to execute the Transfer and Dismissal Documents promptly to

22   consummate the Settlement Agreement. It would simply compound the

23   prejudice to the Abudawoods to force yet another round of briefings to

24   obtain this most basic compliance with the Settlement Agreement.

25           Thus, Eleanor/Alaa should be ordered to appear in Court or at

26   another specific location in the Central District, and should be ordered to

27   comply with the Award by executing the Transfer and Dismissal

28   Documents consistent with the referenced execution instructions in the

Award at a date and time certain within five (5) days of this Court's execution of the Proposed Judgment. If Eleanor/Alaa fail to appear, they should be subject to the contempt authority of this Court to force them to appear and comply with the Award, including but not limited to issuance of a bench warrant. If Eleanor/Alaa otherwise fail to comply, they should be subject to further contempt sanctions that this Court deems appropriate and necessary to enforce the Award and its Judgment.

## D.
### The Court Should Assess the Abudawoods' Post-Award Attorneys' Fees Against Eleanor/Alaa.

Although the FAA does not provide for an award of fees to a prevailing party, "it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hall v. Cole*, 412 U.S. 1, 5 (1973) (quotation omitted).

In the context of the enforcement of arbitral awards, Ninth Circuit law provides that "an unjustified refusal to abide by an arbitrator's award may equate [to] an act taken in bad faith, vexatiously or for oppressive reasons." *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (*UPIW*) (affirming that award of attorneys' fees where the defendant company's refusal to abide by the arbitration award was "without justification"); *see also Sheet Metal*, 84 F.3d at 1192 (affirming the award of attorneys' fees because the defendant "simply refused to honor the award rather than filing a petition to vacate it"); *Domke* § 48:8.[10] A losing party that "fail[s] to show any substantial

---

[10] Although this rule is most often invoked in labor arbitrations, the Ninth Circuit has applied it outside of the labor context. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran*, 665 F.3d at 1104.

MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD

ground justifying its refusal to comply with the arbitrator's award" acts in bad faith. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. United Farm Tools, Inc., Speedy Mfg. Div.*, 762 F.2d 76, 77 (8th Cir. 1985) (*UAW*) (failing to "act to have the award set aside" and merely "refus[ing] to comply with the arbitrator's award" without justification "constituted evidence of bad faith").

"Bad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *UPIW*, 707 F.2d at 428.[11] A losing party that "fail[s] to show any substantial ground justifying its refusal to comply with the arbitrator's award" acts in bad faith. *See UAW*, 762 F.2d at 77. In that context, an award of attorneys' fees "satisfies a dual purpose—deterrence and compensation." *UPIW*, 707 F.2d at 428. "The threat of an award of attorneys' fees tends to deter frivolous dilatory tactics. The award also compensates a plaintiff for the added expense of having to vindicate clearly established rights in court." *Id.* (cleaned up).

Under the facts here, the Abudawoods are entitled to recover their post-Award fees based on Eleanor/Alaa's bad faith refusal to comply with the Award. After executing the Settlement Agreement, Eleanor/Alaa have held up the transactions anticipated therein by demanding a guaranty provision that did not exist, both previously when the Action was pending and subsequently in arbitration. And then in arbitration they argued that

---

[11] Some of the Abudawoods were defendants in the Action. But in the context of their efforts to enforce the Settlement Agreement through the arbitration, the Abudawoods sought and obtained affirmative relief. They are thus "plaintiffs" in the sense referred to in *UPIW*.

MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD

there was not even an enforceable Settlement Agreement, directly contrary to repeated representations made to this Court.

As the Award reestablished, Eleanor/Alaa are parties to a binding and enforceable Settlement Agreement, they are not entitled to a guaranty or security for future installment payments, and they are required to execute the relevant Transfer and Dismissal documents. They then refused to comply with the Award, notwithstanding the Arbitrator's (and their counsel's) persistent efforts to convince them to comply. Indeed, Judge Phillips granted Eleanor/Alaa *five extensions* over the course of one month to sign the required documents, and still they refused to do so – they simply did not appear at their counsels' office with no explanation (even to this day), although their counsel had all the required documents in hand with a notary to be executed and although Abudawoods' counsel around the world were standing by to approve the signing and address any procedural issues that may arise. Judge Phillips has detailed Eleanor/Alaa's misconduct in his November 29, 2023 order, recommending that any court confirming the Award take their bad faith into account in fashioning an appropriate remedy to compel compliance and in considering an award to the Abudawoods of reasonable attorneys' fees and costs incurred post-Award. Holscher Decl. Ex. J.

The facts here are, if anything, significantly more egregious examples of bad faith than those in which the Ninth Circuit and other courts of appeals have affirmed an award of attorneys' fees on a motion to confirm an arbitration. *See, e.g.*, *Sheet Metal*, 84 F.3d at 1192 (affirming fee award when employer exhibited bad faith by failing to abide by award to reinstate ten employees and give them each a week of back pay); *UPIW*, 707 F.2d at 428 (affirming fee award when company defied arbitrator's ruling to reinstate a single employee and make her whole); *UAW*, 762 F.2d at 77

1    (affirming fee award when employer unjustifiably refused award

2    requirement of reimbursement of overtime). The Court should award the

3    Abudawoods their post-Award attorneys' fees and costs.

4                                    *      *      *

5         For the reasons stated above, the Court thus should confirm the

6    Arbitrator's Award, enter the Proposed Judgment both to confirm the

7    Award and to compel Eleanor/Alaa to appear and execute the Transfer and

8    Dismissal documents as required consistent with the Award, award the

9    Abudawoods their post-Award attorneys' fees and costs, and issue any

10   further orders it deems appropriate and necessary to enforce the Award.

11

12   DATED:  December 22, 2023           KIRKLAND & ELLIS LLP

13                                       /s/ Mark Holscher
14                                       Mark Holscher (SBN 139582)
                                         mark.holscher@kirkland.com
15                                       Edward Hillenbrand (SBN 310872)
                                         edward.hillenbrand@kirkland.com
16                                       2049 Century Part East, Suite 3700
                                         Los Angeles, CA  90067
17                                       Tel.: 213.680.8400

18                                       Michael Shipley (SBN 233674)
19                                       mshipley@kirkland.com
                                         KIRKLAND & ELLIS LLP
20                                       555 South Flower Street
                                         Los Angeles, CA  90071
21                                       Tel.: 213.680.8400

22                                       Attorneys for Applicants
23

24

25

26

27

28

**MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby attest that this brief contains 6,079 words, which complies with the word limit of L.R. 11-6.1.

DATE:  December 22, 2023                    _____/s/ Mark Holscher_____

*Attorney for Applicants*

MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD