# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANA ISMAIL ABUDAWOOD; AYMAN ISMAIL ABUDAWOOD; ANAS ISMAIL ABUDAWOOD; SALWA ISMAIL ABUDAWOOD,<br><br>Applicants,<br><br>v.<br><br>ELEANOR DE LEON; ALAA ABUDAWOOD,<br><br>Respondents. | CASE NO. 8:23-cv-02448-JLS-JDE<br><br>**ANTI-SUIT PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

On June 11, 2018, Eleanor De Leon and Alaa Abudawood (the De Leons) initiated an action in this Court in the Central District of California. Represented by counsel from the globally recognized firm, Quinn Emanuel Urquhart & Sullivan, the De Leons sought to have their interest in the estate of late Sheikh Osama Ismail Abudawood bought out at fair market value by Ayman Abudawood, Anas Abuwood, and several named entities owned by the Abudawood family ("the Abudawoods"). The De Leons, who were represented throughout the litigation by numerous well-regarded counsel, reached a binding global settlement with the Abudawoods on June 1, 2022, memorialized in a Memorandum of Understanding ("MOU").

Since that time, however, the De Leons have failed and refused to execute the final Long Form Settlement Agreement as well as the necessary asset transfer documents, as required by the binding MOU. Even more egregious, and as outlined more fully below, the De Leons have ignored and violated orders of this Court and have refused to appear in these proceedings. Specifically, the terms of the MOU require the De Leons to dismiss their claims and cross-claims "in all pending litigation worldwide," which included the De Leons' claims for buyouts or asset recovery in actions in the Cayman Islands, the United States, Saudi Arabia, and elsewhere. (MOU § 2, Doc. 2-1.) The MOU further states that "the schedule of cash payments set forth in this [MOU] satisfies among other things the requirements of the Saudi court judgment on November 20, 2021." (*Id.* § 2(d).) Despite having been ordered, both in arbitration and by this Court, to comply with the terms of that MOU, the De Leons have violated those orders and the terms of the MOU by initiating proceedings in Saudi Arabia to enforce the November 2021 judgment.

On March 27, 2024, the Court granted a temporary restraining order ("TRO") that enjoined those Saudi proceedings for 14 days. (TRO, Doc. 48.) The

1  Court also ordered the De Leons to explain why a preliminary injunction
2  enjoining the Saudi proceedings should not issue. (*Id.*) The De Leons failed to
3  file a response and then failed to appear at the hearing that the Court held on
4  April 9, 2024. Based on the evidence before it and the non-opposition of the De
5  Leons, the Court ORDERS a preliminary injunction as described further below.

## II.   BACKGROUND

There is good cause to believe that the De Leons have engaged in and are likely to continue to engage in bad-faith, willful misconduct in breach of the MOU between the De Leons and the Abudawoods. This Court's prior judgment and orders required compliance by the De Leons with the Arbitrator's Award, dated October 13, 2023, which affirmed that the MOU was a binding agreement containing all material terms. (*See* Arbitrator's Award, Doc. 2-4.) Under the terms of the MOU, the De Leons ("Sellers"), on the one hand, and the Abudawoods ("Buyers"), on the other hand, agreed to resolve all their disputes, including the De Leons' "desire to be bought out of their inherited interests in the assets of the late Sheikh Osama I. Abudawood." (MOU at 2).

The MOU provided that the Abudawoods would purchase "all of [the De Leons'] interests" in certain assets. (*Id.* § 1(a).) The Assets subject to the MOU were specifically defined and identified in Appendix 2 of the MOU, which includes, by name, nine Saudi Arabian entities among several other companies, properties, and assets located around the world. (*Id.* at 10–12.) Those named entities covered by the MOU include all the entities that are now the subject of the Saudi enforcement proceedings: (1) Al Wafra International Company for Industrial Investments Limited; (2) Al Safwa International Company for Industrial Investments Limited; (3) Al Nomow Wal Tafawoq for Marketing Solutions Company Limited; and (4) Al Takamol Al Raedah for Modern Services Company; (5) Modern Integrated Solutions Co. for Marketing Services; (6) Ismail Ali Abudawood Trading Company (also referred to as IATCO); and (7) Al

1 Haditha Company (also referred to as Modern Investment Company for Trade
2 and Industries or MITCO). (*Id.*)
3       The MOU provided for the dismissal of U.S. litigation instituted by the De
4 Leons; for the resolution of all other litigation pending in the United States,
5 Saudi Arabia, the Cayman Islands, and elsewhere; and for the Abudawoods to
6 purchase the De Leons' interest in the Assets (as defined in the MOU) for cash
7 consideration to be paid over four installments (more than half upon the De
8 Leons' execution of the asset transfer and dismissal documents, and the
9 remainder over three years). (*Id.* § 2.)
10       The binding MOU agreed to by the De Leons rendered any Saudi Arabian
11 proceedings or judgment fully satisfied and therefore moot. (*Id.* § 2(a)–(d).) In
12 particular, pursuant to Section 2(d) of the Settlement Agreement, all parties
13 specifically agreed that "the schedule of cash payments set forth in this [MOU]
14 satisfies among other things the requirements of the Saudi court judgment on
15 November 20, 2021 providing for the purchase of the Sellers' shares in the Saudi
16 Arabian Entities." (*Id.* § 2(d).)
17       The MOU further provided that any disputes would be resolved through
18 an arbitration before the "Hon. Layn Phillips (Ret.) for an expedited binding
19 decision." (*Id.* § 6(a).) After this Court dismissed the U.S. litigation that the De
20 Leons chose to commence against the Abudawoods in the Central District of
21 California, the De Leons and the Abudawoods reached an impasse regarding the
22 interpretation of the MOU. In July 2023, the parties submitted their respective
23 disputes to the designated arbitrator. Former Judge Phillips was asked to
24 decide whether the MOU was enforceable and binding, and whether it contained
25 all material terms. On September 5, 2023, Judge Phillips held a 4.5-hour
26 arbitration hearing via Zoom, during which the De Leons and the Abudawoods
27 were present and were represented by counsel. (Arbitrator's Award at 3). As set
28 forth in the Award, the parties also submitted extensive briefing. Throughout

the briefing and arbitration, as was true at every stage of the U.S. proceedings, the De Leons were represented by reputable counsel. The Arbitrator decided that the MOU is a binding agreement containing all material terms; based on those material terms, the Arbitrator concluded that the De Leons were required to execute the Abudawoods' Long Form Settlement Agreement and ordered the De Leons to sign and execute all necessary asset transfer documents. (*Id.* at 3–5.)

As a result, the enforceability of the MOU, the Settlement Agreement, and the material terms were all fully resolved on October 13, 2023. (*Id.* at 6.) The Arbitrator's Award ordered that "[w]ithin five days of the date of this order [i.e., by October 18, 2023], the Sellers execute" the required asset transfer documents "consistent with the execution instructions," and that the initial payment "shall be due and payable by the Buyers immediately" after the proper execution of these documents by Sellers. (*Id.* at 5–6.) Despite numerous opportunities to comply with the Award, the De Leons nonetheless failed to do so. Twice, the Arbitrator tried to order the De Leons to sign the necessary documents, and eventually concluded that the De Leons' refusal to sign was in bad faith. (*See* Arbitrator's Orders, Docs. 2-8 & 2-10.)

Because of the De Leons' refusal to abide by the Arbitrator's Award, the Abudawoods (including additional named family members Sana Ismail Abudawood and Salwa Ismail Abudawood) sought and received confirmation of the Arbitrator's Award from this Court. When parties agree to arbitrate disputes, the role of a district court in confirming the final arbitral award is limited. The award may be vacated only if it "was procured by corruption, fraud, or undue means," if the arbitrator was biased, if the arbitrator engaged in misconduct that prejudiced the rights of a party, or if the arbitrator exceeded his or her powers. *See* 9 U.S.C. § 10(a). The award may be modified only if "there was an evident material miscalculation of figures or an evident material mistake

in the description of any person, thing, or property referred to in the award," if "the arbitrators [] awarded upon a matter not submitted to them," or if "the award is imperfect in matter of form not affecting the merits of the controversy." *Id.* § 11.

On January 31, 2024, this Court confirmed the Arbitrator's Award; there was no basis for modifying or vacating the Award. Furthermore, the Award reflected the Court's own understanding of the facts and the law. The Court stated: "The October 13, 2023 Final Arbitration Award issued by the Honorable Layn R. Phillips is hereby confirmed [] and entered as Judgment of this Court." (Order Confirming Award, Doc. 27.) And because arbitral awards are not self-enforcing and "must be given force and effect by being converted to judicial orders by courts," the Court also issued orders to enforce the award. *Tube City IMS, LLC v. Anza Cap. Partners, LLC*, 25 F. Supp. 3d 486, 489 (S.D.N.Y. 2014) (quoting *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir.2006)). That same day, this Court issued a final judgment and an order enforcing that judgment, ordering the De Leons "[t]o execute all documents in accordance with the execution instructions identified in the Final Arbitration Award." (Final Judgment, Doc. 28; Order Enforcing Judgment at 3, Doc. 29.) This Court also confirmed the Arbitrator's finding that the De Leons had "acted in bad faith . . . by failing to comply with the award without justification." (Order Confirming Award at 2.)

Despite the Arbitrator's Award, the Court's Order Confirming the Arbitral Award, the Final Judgment, and the Order Enforcing the Final Judgment, the De Leons continue to act in bad faith in willfully refusing to execute the asset transfer and related dismissal documents.

On March 26, 2024, the De Leons further ignored this Court's orders when they filed a new action in Saudi Arabia to enforce the superseded judgment dated November 20, 2021. (*See* Basrawi Decl. ¶ 2, Doc. 47-8.) The Court has

read the certified translations of the electronic notices, issued to Ayman Abudawood, to enforce the 2021 judgment on the equivalent of an *ex parte* basis. (*Id.* ¶ 3; Exhibits to Basrawi Decl., Docs 47-9–47-12; Exhibits to Supp. Basrawi Decl., Docs 58-2–58-25.)  But the 2021 Saudi judgment was rendered moot by the MOU.  (*See* MOU § 2(d) ("[T]he schedule of cash payments set forth in this [MOU] satisfies among other things the requirements of the Saudi court judgment on November 20, 2021 providing for the purchase of the Sellers' shares in the Saudi Arabian Entities.").)

The MOU's express terms detailed the consequences of the De Leons filing any litigation against the Abudawoods.  Specifically, the MOU provides: "Should [the De Leons] file any litigation against any of [the Abudawoods] in the future concerning any of the Assets (except as outlined in Section 6, Dispute Resolution, below), all past and future payments under this agreement shall be forfeited, and all prior amounts paid to [the De Leons] shall become immediately due and payable."  (*Id.* § 1(b)(ii).)

Because the enforcement proceedings in Saudi Arabia violate the binding terms of the MOU, the Court issued a TRO that enjoined those proceedings. (*See* TRO.)  The TRO was served on the De Leons in multiple ways, including by personal service in the Philippines where the De Leons now live, by email and WhatsApp, and by first class mail to their California address.  (*See* Proof of Service, Doc. 49.)

The Abudawoods have presented evidence that, notwithstanding the Court's TRO, the De Leons have not withdrawn their enforcement applications in Saudi Arabia and, indeed, have continued actively to pursue these applications in direct defiance of this Court's order.  (*See* Basrawi Supp. Decl. ¶ 2, Doc. 58-1; Exs. 1–5 to Basrawi Supp. Decl., Docs. 58-2, 58-3, 58-4, 58-5 & 58-6.)  The De Leons then demonstrated further defiance of this Court and the

judicial process by filing two additional enforcement applications. (Basrawi Supp. Decl. ¶ 3; Exs. 6–7 to Basrawi Supp. Decl., Docs. 58-7 & 58-8.)

### III. LEGAL STANDARD

"A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be 'used sparingly.'" *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981) (quoting *Philp v. Macri*, 261 F.2d 945, 947 (9th Cir. 1958)). For an anti-suit injunction, the typical factors for a preliminary injunction fall away; a plaintiff "need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006). Those factors are: "(1) 'whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined'; (2) whether the foreign litigation would 'frustrate a policy of the forum issuing the injunction'; and (3) 'whether the impact on comity would be tolerable.'" *Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 913 (9th Cir. 2009) (quoting *E & J Gallo Winery*, 446 F.3d at 991, 994).

### IV. ANALYSIS

The Abudawoods have established that the issuance of an anti-suit injunction is proper. First, the parties and the issues are the same. The question here is "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." *E & J Gallo Winery*, 446 F.3d at 991. Here, the parties in the two actions are identical, and this action disposes of the Saudi suit because, by enforcing the terms of the MOU, the Saudi suit is precluded. Further litigation to enforce the Saudi judgment is null and void pursuant to the express terms of the MOU. (*See* MOU § 2(d); Basrawi Decl. ¶¶ 2-6.)

Second, the foreign litigation frustrates the policy of this forum. As the Abudawoods argue, "the finality of a federal court's judgment confirming an arbitral award following the parties' full participation implicates several important policies," including policies in favor of arbitration and the finality of court judgments. (*See Ex Parte* Application for TRO at 27, Doc. 47.) Indeed, parties should not be allowed to relitigate the same factual issues in foreign courts after receiving an adverse judgment in the United States. *See Triton Container Int'l Ltd. v. Di Gregorio Navegacao LTDA*, 440 F.3d 1137, 1138 (9th Cir. 2006). And public policy in favor of arbitration "would be undermined" if litigants were allowed "to proceed with protracted and expensive litigation that is intended to vitiate an international arbitral award that federal courts have confirmed and enforced." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 126 (2d Cir. 2007).

Third, the impact on comity is tolerable. "[C]omity is less likely to be threatened in the context of a private contractual dispute than in a dispute implicating public international law or government litigants." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 887 (9th Cir. 2012). "[W]here two parties have made a prior contractual commitment to litigate disputes in a particular forum, upholding that commitment by enjoining litigation in some other forum is unlikely to implicate comity concerns at all." *Id.* The Abudawoods bargained for the beneficial and legal ownership of assets as well as dismissal of litigation around the world in exchange for substantial financial consideration to be paid to the De Leons in the form of installment payments. (*See* MOU at §§ 1, 3.) Furthermore, the forum selected for final resolution—the Central District of California—was the one that the De Leons chose *themselves* when they initiated a lawsuit here and then negotiated a global settlement agreement here. The contractual agreement to abandon foreign litigation in favor of resolving the issues here in the Central District of California suggest that comity is not

implicated. Further the MOU provides that disputes were to be litigated via arbitration in this forum. Therefore, requiring the De Leons to comply with the MOU and this Court's orders does not implicate comity concerns.

For these reasons, the Court GRANTS a preliminary injunction enjoining the De Leons from taking any action to pursue the Saudi enforcement actions and requiring them to withdraw those applications. The De Leons are hereby ORDERED to withdraw those applications to enforce the November 2021 judgment immediately.

## V. PROHIBITED ACTIVITIES AND OBLIGATIONS

IT IS HEREBY ORDERED that the De Leons, their agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, are subject to an anti-suit injunction, and as such are prohibited from:

A. Filing, maintaining, and/or pursuing any litigation against the Abudawoods in breach of Section 1(b)(ii) of the MOU, including specifically the attempt to enforce the Saudi court judgment dated on or about November 20, 2021, providing for the purchase of the De Leons' shares in the Saudi Arabian Entities in breach of Section 2(d) of the MOU.

B. Acquiring or possessing assets from, or benefiting in any way from, the action to enforce the Saudi court judgment on November 20, 2021, providing for the purchase of the De Leons' shares in the Saudi Arabian Entities in breach of Section 2(d) of the MOU.

The De Leons are further ordered to withdraw any pending applications to enforce the Saudi court judgments immediately, as reflected in the Exhibits to the Basrawi declarations, and to provide notice of such withdrawal to the Abudawoods, this Court, and the Saudi courts. This includes their enforcement action or actions in Saudi Arabia relating to the following entities: (1) Al Wafra International Company for Industrial Investments Limited; (2) Al Safwa

1 International Company for Industrial Investments Limited; (3) Al Nomow Wal
2 Tafawoq for Marketing Solutions Company Limited; and (4) Al Takamol Al
3 Raedah for Modern Services Company; (5) Modern Integrated Solutions Co. for
4 Marketing Services; (6) Ismail Ali Abudawood Trading Company (also referred
5 to as IATCO); and (7) Al Haditha Company (also referred to as Modern
6 Investment Company for Trade and Industries or MITCO).  All seven of these
7 entities are specifically listed as Assets in Appendix 2 to the MOU.
8       The De Leons are further ordered not to file any enforcement or other
9 actions in Saudi Arabia or any other jurisdictions relating to any of the
10 remaining Assets set out and defined in the MOU, including but not limited to
11 the remaining Saudi Arabian entities set out in the MOU: (1) Bunyan
12 Development Company for Real Estate Investments; and (2) White Stores
13 Catering Company.
14 **VI.   SERVICE OF THIS ORDER**
15       IT IS FURTHER ORDERED that the Abudawoods are directed to serve
16 this order on the De Leons via all available electronic means, including, but not
17 limited to email, WhatsApp, etc., as well as on their counsel in Saudi Arabia by
18 electronic means.
19 **VII.  RETENTION OF JURISDICTION**
20       IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this
21 matter for all purposes.
22 **VIII. ATTORNEYS' FEES**
23       The Court awards the Abudawoods their reasonable attorneys' fees and
24 costs for work performed the United States, in Saudi Arabia, and elsewhere to
25 respond to the De Leons' enforcement actions in Saudi Arabia. The Abudawoods
26 shall file a motion for attorneys' fees and an application to tax costs, in
27 accordance with the Local Rules and this Court's own procedures **within thirty**
28 **(30) days**.

1    IT IS SO ORDERED.

2

3    DATED: April 10, 2024

4                                          _____
5                                          Honorable Josephine L. Staton
                                           United States District Judge
6